UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

v.

CURTIS ALANZO BALLARD,

           Defendant.

                                          /

Case No. 2:21-cr-20286-1

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**DENYING MOTION TO SUPPRESS [21]**

      Defendant Curtis Alanzo Ballard was indicted on possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). ECF 12, PgID 23–24. Defendant moved to suppress evidence seized during a traffic stop that led to a warrantless search of his car and his person. ECF 21. The Court held an evidentiary hearing on the motion, ECF 44, and the parties also offered supplemental briefs, ECF 42; 43, the filing of which the Court authorized. ECF 45, PgID 229. The Court later ordered the parties to brief whether the stop was reasonable under *Hensley*'s facts-and-circumstances test and whether the officer had probable cause to stop Defendant for a civil infraction. *Id.* at 230–31. The parties complied. ECF 46; 47. For the reasons below, the Court will deny the motion to suppress.

1

## BACKGROUND

As part of a crime reduction effort, a Michigan State Police officer was patrolling a high crime area in Inkster, Michigan. ECF 44, PgID 192. While he drove behind a black Dodge Journey, the officer searched for the car's registration by entering the car's license plate into the Secretary of State and Law Enforcement Information Network databases. ECF 30-1, PgID 124; ECF 30-2, PgID 133; ECF 33 at 0–1:06 (dash-camera video); ECF 44, PgID 193. The database search revealed that no record existed for the license plate. ECF 44, PgID 193. Meanwhile, the car immediately turned left toward a driveway. *Id.* at 197. The officer then tried to run a second search. *Id.* at 193–94. The second search occurred when the car turned into the first available driveway on the left. *Id.* at 194, 197. The officer, who believed the car acted evasively, then pulled in behind the car and commenced the traffic stop just after the car came to a rest in the driveway and Defendant was exiting the car. ECF 33 at 0:25–30; ECF 44, PgID 194, 197. The stopped car was protruding into the sidewalk. ECF 44, PgID 198. The officer stopped the car under the belief that the car was unregistered. *Id.* at 208.

The officer promptly approached the driver's side of the car and informed the driver, Defendant, that he was not receiving a return on the car's license plate. ECF 33 at 1:00–1:12; ECF 44, PgID 198. The officer then asked Defendant if he had registration for the car. ECF 33 at 1:00–1:12; ECF 44, PgID 199. Defendant replied that he had "everything." ECF 33 at 1:00–1:12.

After spending a minute looking through papers Defendant had handed him, the officer informed Defendant that the papers were not the car's registration or proof of insurance. *Id.* at 1:50–1:59. Defendant took three more minutes to search for the car's registration and proof of insurance. *Id.* at 2:00–4:55; ECF 44, PgID 199. After Defendant handed the officer several more papers, the officer returned to the patrol car and searched the databases once more for the car's registration and ran licenses for Defendant and a passenger. ECF 33 at 5:00–8:00. The searches lasted three minutes. *Id.* at 5:00–8:00. Based on those subsequent searches, the officer learned that the car was in fact registered but lacked insurance. *Id.* at 8:00–8:10; ECF 44, PgID 200. When the officer informed Defendant that he had no insurance, he also informed Defendant that driving a car without insurance is a one-year, arrestable misdemeanor. ECF 33 at 8:30–8:35; ECF 44, PgID 201. The officer then asked Defendant to exit the car and he detained Defendant. ECF 33 at 9:00–9:31; ECF 44, PgID 201–02. Defendant consented to the officer searching his person.[1] ECF 33 at 9:49–9:55; ECF 44, PgID 202, 214. And the officer found a bag containing a substance on Defendant's person. ECF 33 at 10:50–11:00; ECF 44, PgID 203.

Defendant quickly confirmed to the officer that the substance in the bag was cocaine. ECF 33 at 10:55–11:00; ECF 44, PgID 203. An officer then asked Defendant if there was anything else illegal in the car; Defendant affirmed and explained that there was a firearm under the driver's seat. ECF 33 at 11:25–11:40; ECF 44, PgID

---

[1] Defendant did not challenge the legality of the consent search other than as fruit of an unlawful traffic stop. *See generally* ECF 21.

203–04. The police then searched the car and found the firearm, along with another bag of cocaine and several cell phones. ECF 33 at 11:40–22:45, 30:00–30:30; ECF 44, PgID 204.

## LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[A] police officer lawfully may stop a car when he has probable cause to believe that a civil traffic violation has occurred, or reasonable suspicion of an ongoing crime." *United States v. Jackson*, 682 F.3d 448, 453 (6th Cir. 2012) (citation omitted). An officer with reasonable suspicion may stop a suspect for a completed misdemeanor so long as the stop is reasonable. *United States v. Jones*, 953 F.3d 433, 437–38 (6th Cir. 2020). Courts analyze several factors to determine the reasonableness of a stop for a completed misdemeanor based on reasonable suspicion. *Id.* (quoting factors outlined in *United States v. Hensley*, 469 U.S. 221, 228–29 (1985)).

"Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (citation and quotation omitted). An officer may draw "specific reasonable inferences . . . from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). "Probable cause is generally defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United*

4

*States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003) (citation and quotation marks omitted). "In determining whether probable cause exists, a court must examine the totality of the circumstances from the perspective of the officer at the time of the incident." *Id.* (citation omitted).

After an officer lawfully stops a car, any search conducted without a warrant is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation and quotation omitted).

## DISCUSSION

The Court will first address the legality of the traffic stop. After, the Court will review the warrantless search of Defendant's car.

I. <u>Traffic Stop</u>

Defendant attacked the traffic stop's legality on two grounds. Defendant first argued that the officer illegally stopped his car. ECF 21, PgID 61–65. Second, Defendant claimed the traffic stop was unreasonable based on the duration and scope. *Id.* at 65–68. Both grounds fail.

 A. *Stop*

First, the Government argued that a police officer may lawfully stop a car if the officer has reasonable suspicion that the motorist is committing "an ongoing misdemeanor." ECF 30, PgID 109 (quoting *United States v. Simpson*, 520 F.3d 531,

5

541 (6th Cir. 2008)).² In Michigan, driving an unregistered car is an arrestable misdemeanor violation. Mich. Comp. Laws § 257.215; *see, e.g.*, *Hoover v. Walsh*, No. 09-14068, 2011 WL 538861, at *11 (E.D. Mich. Feb. 11, 2011).

But the officer did not begin the stop at issue here until after the car had parked and Defendant was exiting the car. ECF 33 at 0:25–30; ECF 44, PgID 194. As a result, the misdemeanor of driving an unregistered car was not ongoing when the stop began—it was complete. Thus, *Simpson*'s ongoing misdemeanor standard would not apply. *See United States v. Taylor*, 471 F. App'x 499, 511 (6th Cir. 2012) (quoting *Simpson*, 520 F.3d at 541) ("The *Simpson* court held that if the police suspected that a violation of the law was 'ongoing' (as opposed to 'completed'), regardless of whether that violation was criminal or civil in nature, then the stop's constitutionality 'is governed by the standard of reasonable suspicion, not probable cause.'").

Because the misdemeanor was completed, the Court cannot analyze the incident as an ongoing misdemeanor. And the Sixth Circuit has two standards to determine whether a stop for a completed misdemeanor offends the Fourth Amendment. One examines whether the officer has probable cause to stop the car.

---

² The Government only argued that the officer had reasonable suspicion to stop Defendant in its response to the suppression motion. *See* ECF 30, PgID 108. In the second supplemental brief, the Government argued that the officer had probable cause to stop Defendant. ECF 47, PgID 241–42.

*Collazo*, 818 F.3d at 253–54.³ The other examines whether a *Terry* stop was reasonable under the *Hensley* factors. *Jones*, 953 F.3d at 436–38. Because the Government first asserted the officer had reasonable suspicion to stop Defendant, and later asserted the officer had probable cause, the Court will analyze the reasonableness of the stop under both standards.

    1.    *Probable Cause*

Here, the officer searched the license plate on Defendant's car by use of the Secretary of State and Law Enforcement Information Network databases. ECF 33 at 0–1:06; ECF 44, PgID 193. The database searches occurred while Defendant was driving the car and revealed that no record existed for the license plate. ECF 33 at 0:25–30; ECF 44, PgID 193–94, 197. Based on those results, the officer had probable cause that Defendant had driven an unregistered car—a misdemeanor. The database results showed no record for the car's license plate, the officer saw Defendant driving the car, and the officer even checked the databases twice. Thus, commonsense would

---

³ "Although 'virtually every other circuit court of appeals has held that reasonable suspicion suffices to justify an investigatory stop for a traffic violation,' this circuit has required probable cause to justify an investigatory stop for *completed* misdemeanor traffic violations." *United States v. Guajardo*, 388 F. App'x 483, 487 (6th Cir. 2010) (emphasis in original) (quoting *Simpson*, 520 F.3d at 540). Probable cause also applies to a traffic violation that "*was occurring*." *United States v. Winters*, 782 F.3d 289, 296 (6th Cir. 2015) (emphasis added and quotation omitted). At any rate, because the Government raised only a misdemeanor that was "clearly completed by the time [the officer] actually stopped [Defendant]," the officer "needed to have probable cause rather than reasonable suspicion that" Defendant had violated Mich. Comp. Laws § 257.215. *United States v. Hughes*, 606 F.3d 311, 316 n.8 (6th Cir. 2010) (emphasis omitted).

dictate that based on the totality of circumstances, the officer had reasonable cause to believe that Defendant was driving an unregistered car. *Copeland*, 321 F.3d at 592.

Because the officer had a probable cause that Defendant had committed a misdemeanor, the stop was lawful. *Hughes*, 606 F.3d at 316 n.8. Still, Defendant alleged that the officer did not receive a record about the car's registration because the officer had either "slow equipment or [a] poor computer connection." ECF 21, PgID 64. But the officer explained that the first database searches showed no record existed for the car. ECF 33 at 1:00–1:12; ECF 44, PgID 193–94, 197, 208. The officer was therefore under the reasonable impression that no registration existed for the car. ECF 33 at 1:00–1:12; ECF 44, PgID 208; *see Copeland*, 321 F.3d at 592–93 (explaining that probable cause is not assessed in hindsight). And because the officer had probable cause, the officer could lawfully stop the car. At bottom, the officer lawfully stopped Defendant's car based on probable cause that Defendant was driving an unregistered car.

      2.    Hensley *Factors*

The first *Hensley* factor examines whether "the stop promotes the interest of crime prevention." *Jones*, 953 F.3d at 437 (cleaned up). Second, the Court examines whether the stop "furthers public safety." *Id.* (cleaned up). The third factor looks at the strength of "the government's interest in 'solving crimes and bringing offenders to justice' in this case." *Id.* (quoting *Hensley*, 469 U.S. at 229). And the last factor examines whether "restraining police action until after probable cause is obtained [would] unnecessarily hinder the investigation or allow a suspect to flee in the

interim." *Id.* at 437–38 (cleaned up). The *Hensley* factors support finding that the stop here was reasonable.

First, the stop promoted crime prevention because the officer had, at minimum, reasonable suspicion that Defendant was driving an unregistered car when the stop began. *See id.* (holding that an officer who had reasonable suspicion of a crime satisfied the first factor). The officer searched the databases while Defendant was driving the car and the searches showed no record existed for the car. ECF 33 at 1:00–1:12; ECF 44, PgID 193–94, 197, 208. The officer was therefore under the reasonable impression that no registration existed for the car. ECF 33 at 1:00–1:12; ECF 44, PgID 208; *see Terry*, 392 U.S. at 27.

The stop also promoted public safety because the stop occurred mere seconds after the officer believed the car was unregistered. What is more, the stop occurred at Defendant's destination: a house in a residential neighborhood rather than on the side of a busy highway. In short, the officer "acted in eminently reasonable fashion" to stop Defendant. *Jones*, 953 F.3d at 438. Third, the officer saw Defendant driving what the officer believed was an unregistered car mere seconds before he stopped Defendant. The Government has a strong interest in solving crimes while or shortly after the crime occurs. To be sure, the officer stopped Defendant's car promptly after he suspected the crime. For the last factor, even if the officer were only to have reasonable suspicion, simply asking the driver to provide proof of registration is a small inconvenience that would have either quickly established probable cause or

9

alleviated the officer's concerns about the car's registration. All four *Hensley* factors therefore dictate that the stop was reasonable.

Because the stop was reasonable under both probable cause and *Hensley* determinations, the Court will now evaluate whether the duration and scope of the stop was reasonable.

### B. Duration and Scope

After the officer stopped the car, the stop itself was reasonable because it was "limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983). For scope, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* Put differently, the stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (citation and quotation omitted). And for duration, a stop must "last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500.

The scope of the stop was reasonable. An officer may ask for a driver to provide proof of insurance at a traffic stop even though the underlying suspicion for the stop was about the car's registration. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *see also Collazo*, 818 F.3d at 258 (noting that an officer does not violate the Fourth Amendment by "inspecting the automobile's registration and proof of insurance").

10

Although the officer's reasonable belief about the car's registration later proved unfruitful, the officer was free to continue the traffic stop because the officer had learned—during the traffic stop—that Defendant had driven an uninsured car. *See United States v. Blair*, 524 F.3d 740, 752 (6th Cir. 2008) ("Once the purpose of a traffic stop is completed, a police officer may not further detain the vehicle or its occupants *unless* something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.") (emphasis added) (citation and internal quotation marks omitted). Because the officer had reasonable suspicion that Defendant drove without insurance—an arrestable, one-year misdemeanor under Mich. Comp. Laws § 500.3102—the scope of the stop reasonably expanded to that misdemeanor. *See United States v. Lawrence*, 425 F. Supp. 3d 828, 833 (E.D. Mich. 2019) (citation omitted) ("[T]he police officers had reasonable suspicion that the vehicle was being driven without insurance and can legally initiate a traffic stop. Indeed, if [a database] shows there is no insurance coverage on the vehicle, police officers can impound the vehicle because it cannot be legally driven.").

The duration of the stop was also reasonable because less than nine minutes lapsed from when the officer had stopped Defendant's car until the officer placed Defendant under arrest. ECF 33 at 1:00–9:31. During those nine minutes, the officer diligently sought to confirm whether Defendant's car was registered. The officer, for example, waited several minutes for Defendant to provide proof of registration. *Id.* at 2:00–4:55; ECF 44, PgID 199. After, the officer searched the databases for the car's registration. ECF 33 at 5:00–8:00. At no point during the stop did the officer appear

11

to delay trying to find out whether Defendant's car was registered. *See id.* at 0:40–8:00. The officer's diligence in promptly resolving his suspicion about the registration made the stop's duration reasonable. *See United States v. Everett*, 601 F.3d 484, 494 (6th Cir. 2010) (explaining that "the overarching consideration" about whether a stop is unreasonably long "is the officer's diligence" in resolving the officer's suspicion) (emphasis omitted).

In sum, the officer lawfully stopped Defendant based on reasonable suspicion of an ongoing misdemeanor—driving an unregistered car. Once the car was stopped, the stop's duration and scope were reasonable and thus constitutional. As a result, the Court will not suppress the evidence obtained from the traffic stop and the consent search.

II. <u>Warrantless Search</u>

Defendant contended that the warrantless search of the car's interior was unconstitutional because the search did not fall within any exception to the Fourth Amendment's warrant requirement. ECF 21, PgID 68–70. The Government highlighted four exceptions that apply to the warrantless search. ECF 30, PgID 111. The Court need only address the automobile exception to find the warrantless search constitutional.

"Under the automobile exception to the warrant requirement, an officer may perform a warrantless search of a detained vehicle should the officer have probable cause to believe the vehicle contains contraband or evidence of criminal activity." *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012) (citation omitted). "Probable

12

cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002) (citation and internal quotation marks omitted).

After the officer found cocaine on Defendant, the officer had probable cause to search the car for contraband based on Defendant's own statements. Defendant first confirmed that the bagged substance found on his person was cocaine. ECF 33 at 10:55–11:00; ECF 44, PgID 203. Plus, after an officer asked Defendant if there was anything else illegal in the car, Defendant affirmed and explained that there was a gun under the driver's seat. ECF 33 at 11:25–11:40; ECF 44, PgID 203–04. Those statements, along with the cocaine found on Defendant, established probable cause that the car contained contraband or evidence of criminal activity. *See Lyons*, 687 F.3d at 770 ("An officer is permitted to use [a defendant's] responses as a means of confirming or dispelling his initial suspicions of criminal activity.") (citation omitted). In the end, the officer lawfully searched the automobile without a warrant under the automobile exception to the Fourth Amendment. The Court will therefore deny the motion to suppress.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to suppress [21] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: December 6, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 6, 2021, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager
